IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TEODORO SEVERIANO ALCARAZ,

    Petitioner,        No. 2:05-cv-1597 LKK KJN P

  vs.

G.J. GIURBINO, Warden,

    Respondent.     FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

   Petitioner is a state prisoner proceeding without counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2001 conviction on charges of aggravated sexual assault of a minor under the age of fourteen, forcible oral copulation, false imprisonment, and corporal injury to a cohabitant.  Petitioner was sentenced to an aggregate term of 21 years to life in state prison.  Petitioner raises four claims in his petition, filed August 11, 2005, asserting that his prison sentence violates the Constitution.

II. Procedural History

   Petitioner appealed his conviction.  On August 27, 2002, the Court of Appeal for the State of California, Third Appellate District, affirmed petitioner's conviction.  (Lodged/Filed Paper Documents ("LD") 2.)  Petitioner filed a petition for review in the California Supreme

1   Court. (LD 3.) Review was denied on November 13, 2002. (LD 4.)

2          Petitioner filed a petition for writ of habeas corpus in the San Joaquin County

3   Superior Court on November 19, 2003. (LD 7.) The petition was denied on December 17, 2003.

4   (LD 8.) Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal,

5   Third Appellate District on February 3, 2004. (LD 9.) That petition was denied on March 4,

6   2004. (LD 10.)

7          On March 17, 2004, petitioner filed a petition for writ of habeas corpus in the

8   California Supreme Court. (LD 11.) The California Supreme Court denied the petition on

9   February 2, 2005. (LD 12.) The instant petition was filed on August 11, 2005. (Dkt. No. 1.)

10  III. <u>Facts</u>[1]

11         On the evening of June 11, 2000, [petitioner] came home drunk
       and found his 13-year-old step-daughter, C., on the telephone. He
12     became angry and slapped C. in the face when he took the
       telephone from C. and the caller would not identify himself. He
13     did not approve of C. talking to boys on the telephone. The
       telephone rang again and [petitioner] said it was someone named
14     Carlos and assumed Carlos was C.'s boyfriend.

15         When his wife, Anna, said she did not know who the caller was,
       [petitioner] hit her in the face. He hit her about three times, pulled
16     her hair, and then dragged both Anna and C. into his bedroom.
       [Petitioner] then forced Anna to orally copulate him in front of C.
17
18         C. went to the bathroom, but when she came out, [petitioner]
       grabbed her by the arm and told her to sit next to Anna.
19     [Petitioner] started slapping C. while Anna orally copulated him.
       [Petitioner] threatened C. that she would see her mother buried if
20     she did not do as she was told.

21         Then, over Anna's protests, [petitioner] forced C. to orally
       copulate him by grabbing her head while he pinned Anna to the
22     bed. After five to ten minutes, [petitioner] was done and C. ran to
       the bathroom and locked the door. She washed out her mouth and
23     threw up in the sink before escaping through the bathroom
       window.

24

25  _____

       [1] The facts are taken from the opinion of the California Court of Appeal for the Third
26  Appellate District in <u>People v. Alcaraz</u>, No. C038045 (August 27, 2002), a copy of which was
    lodged by Respondent as LD 2 on October 5, 2002.

That evening, a neighbor called 911 after a very scared teenage girl, whom she did not recognize, started pounding on her door and window. C. then ran to her friend's house, called Ms. Perez (a trusted friend) and asked her to drive over. C. was still crying when Perez arrived. C. told Perez that [petitioner] had forced her mother, and then her, to "suck" his penis.

When Deputy Walters and Officer Flores arrived at C.'s friend's house, C. appeared upset and scared and complained of pains from being hit and having her hair pulled. She told the officers what had occurred.

Anna also spoke with Deputy Walters and Officer Flores that evening, outside the presence of C. and [petitioner]. Her eyes and cheeks were red and her nose was swollen. She appeared scared and ashamed. Anna also told the officers what had occurred.

Deputy Walters and Deputy Laird took [petitioner] into custody. After [petitioner] agreed to make a statement, he provided four different versions of the events. Initially, he denied any domestic or sexual abuse. In the fourth version, he admitted to hitting Anna and forcing both Anna and C. to orally copulate him.

C. testified to the events at the preliminary hearing. At trial, however, both Anna and C. recanted. [Petitioner] testified on his own behalf. He claimed his confession was coerced and taken when he was still drunk and sleepy. Although he admitted hitting both Anna and C., he denied any forcible oral copulation took place.

(People v. Alcaraz, slip op. at 2-4.)

IV. Standards for a Writ of Habeas Corpus

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citation omitted). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be used to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

3

1  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

2  habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim -
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

10  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

11  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

12  Under section 2254(d)(1), a state court decision is "contrary to" clearly

13  established United States Supreme Court precedents if it applies a rule that contradicts the

14  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

15  indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

16  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

17  Under the  "unreasonable application" clause of section 2254(d)(1), a federal

18  habeas court may grant the writ if the state court identifies the correct governing legal principle

19  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

20  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

21  simply because that court concludes in its independent judgment that the relevant state-court

22  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

23  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

24  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

25  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

26  The court looks to the last reasoned state court decision as the basis for the state

4

1   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

2   court reaches a decision on the merits but provides no reasoning to support its conclusion, a

3   federal habeas court independently reviews the record to determine whether habeas corpus relief

4   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

5   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Independent review of the record is not de

6   novo review of the constitutional issue, but rather, the only method by which we can determine

7   whether a silent state court decision is objectively unreasonable."); accord Pirtle v. Morgan, 313

8   F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of

9   a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential

10  standard does not apply and a federal habeas court must review the claim de novo.  Nulph v.

11  Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle, 313 F.3d at 1167.

12  V.  Petitioner's Claims

13          A.  Admission of Expert Witness Testimony

14          Petitioner contends his due process rights were violated by the trial court's

15  admission of expert witness testimony concerning child sexual abuse accommodation syndrome

16  ("CSAAS").  Respondent contends this claim is procedurally barred based on defense counsel's

17  failure to object at trial.

18          The last reasoned rejection of this claim is the decision of the California Court of

19  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

20  this claim as follows:

21          [Petitioner] contends the trial court admitted CSAAS evidence in
            violation of his Sixth and Fourteenth Amendment rights.  His
22          failure in the trial court to object to the admission of the evidence
            on the ground of due process, however, waives any challenge on
23          that basis.  (People v. Rowland (1992) 4 Cal.4th 238, 265, fn.4, 14
            Cal.Rptr.2d 377, 841 P.2d 897; People v. Raley (1992) 2 Cal.4th
24          870, 892, 8 Cal.Rptr.2d 678, 830 P.2d 712.)  Moreover, because
            we conclude that the evidence was admissible, with one exception
25          discussed below (see II, post), [petitioner's] constitutional claims
            fail.  [Footnote omitted.]  (See People v. Hawkins (1995) 10
26          Cal.4th 920, 952, 42 Cal.Rptr.2d 636, 897 P.2d 574, disapproved

on another ground in *People v. Lasko* (2000) 23 Cal.4th 101, 110, 96 Cal.Rptr.2d 441, 999 P.2d 666 & *People v. Blakeley* (2000) 23 Cal.4th 82, 89, 96 Cal.Rptr.2d 451, 999 P.2d 675.)  Ordinary rules of evidence do not infringe on a [petitioner's] right to a fair trial. (*People v. Hall* (1986) 41 Cal.3d 826, 834, 226 Cal.Rptr. 112, 718 P.2d 99.)

Expert testimony is admissible to disabuse jurors of commonly held misconceptions about child sexual abuse.  (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301, 283 Cal.Rptr. 382, 812 P.2d 563.)  CSAAS evidence, while not admissible to prove the abuse occurred, may be used to help explain the victim's behavior in recanting testimony.  As explained in *People v. Bowker* (1988) 203 Cal.App.3d 385, 393, 249 Cal.Rptr. 886, "It is one thing to say that child abuse victims often exhibit a certain characteristic or that a particular behavior is not inconsistent with a child having been molested.  It is quite another to conclude that where a child meets certain criteria, we can predict with a reasonable degree of certainty that he or she has been abused.  The former may be appropriate in some circumstances; the latter--given the current state of scientific knowledge--clearly is not."

Defense counsel objected in limine and again during trial to the admission of the CSAAS evidence on the grounds of relevance and that the probative value was outweighed under Evidence Code section 352.  On appeal, he argues that the trial court should have barred the CSAAS evidence because the prosecutor failed to identify an applicable misconception.

The prosecution's written motion in limine in support of the admission of the CSAAS evidence noted five syndrome categories: "Secrecy, helplessness, entrapment and accommodation, delayed, conflicted and unconvincing disclosure, and retraction."  During oral argument, the trial court first specifically suggested that the recantation misconception was an appropriate basis for the admission of the CSAAS expert testimony.  [Petitioner] now objects it was the trial court, rather than the prosecutor, that first identified the appropriate misconception upon which to admit the CSAAS evidence in this case.  Regardless of who first identified recantation, an appropriate misconception was in fact identified and the requested evidence was properly admitted to dispel that misconception.  Thus, we find no error.

[Petitioner] next contends the CSAAS evidence admitted was overbroad, misleading, unduly prejudicial and should have been excluded under Evidence Code section 352.  None of these contentions has merit.

Evidence Code section 352 permits the exclusion of relevant evidence where "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue

consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The scope of appellate review of a decision to admit evidence under Evidence Code section 352 is exceedingly narrow. The trial court's decision cannot be disturbed on appeal absent a showing that the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, 36 Cal.Rptr.2d 235, 885 P.2d 1.) The record before us discloses no such abuse.

[Petitioner] complains the expert mentioned that 10 percent of abuse is committed by strangers and that such information was "overbroad." We fail to see the prejudice in the admission of such evidence because it was merely a brief statement made during the expert's explanation about former misconceptions about child sexual abuse and programs focusing on "stranger danger." The evidence provided no information about the likelihood of a defendant, or any other nonstranger, being a molester.

[Petitioner] also complains the expert testified molestation is usually a pattern that increases over time. Once again, we fail to see any prejudice in the admission of such evidence. There was no allegation or even suggestion [petitioner] had molested C. or any other victim in the past. This information, like the percentage of abuse by strangers, had no impact on [petitioner's] case.

Finally, [petitioner] complains the expert testimony that CSAAS evidence helps evaluate the validity of a child's statements was misleading. The testimony, however, was not misleading as CSAAS evidence may properly be used to aid the jury's assessment of the victim's seemingly self-impeaching behavior. (*People v. McAlpin*, *supra*, 53 Cal.3d at pp. 1300-1301, 283 Cal.Rptr. 382, 812 P.2d 563; see *People v. Housley* (1992) 6 Cal.App.4th 947, 954-956, 8 Cal.Rptr.2d 431.) Thus, it may help evaluate the validity of a child's statements.

II

[Petitioner] contends the expert witness responded to hypothetical questions tailored to improperly prove abuse had occurred. Although defense counsel did not object at trial, [petitioner] argues such failure to object resulted in constitutionally ineffective assistance of counsel. [Petitioner] contends the testimony was not limited to an explanation of common behaviors but, instead, was directly tailored to establish that C. exhibited the symptoms of a child suffering from CSAAS. We agree with [petitioner] that the hypothetical questions were improper but find no prejudice to warrant reversal.

During the direct examination of the expert witness, the

7

prosecutor provided "hypothetical" facts mirroring the specific facts of this case.  After recounting those "hypothetical" facts, the prosecutor asked the expert witness:  "Would these be traits or would her behavior be at all consistent with the Child Sexual Abuse Accommodation Syndrome hypothetically speaking?"  The expert witness responded in the affirmative, after providing a lengthy explanation of why a child in such a situation may retract her accusation of abuse.  The expert witness concluded his commentary by clarifying that "All those are possibilities without knowing the case in interviewing her, and working with her, and getting her to trust you.  Those are things I would speculate, because in the syndrome, those are the things we often saw that contributed to retractions."

Expert witness testimony on CSAAS which is permissible for rehabilitation of the alleged victim's credibility is "'limited to discussion of victims as a class, supported by references to literature and experience (such as an expert normally relies upon) and does not extend to discussion and diagnosis of the witness in the case at hand.'"  (*People v. Jeff* (1988) 204 Cal.App.3d 309, 331-332, 251 Cal.Rptr. 135, quoting *People v. Roscoe* (1985) 168 Cal.App.3d 1093, 1100, 215 Cal.Rptr. 45, fn. omitted.)  The purpose of this limitation is to prevent the potential misuse of the expert's testimony by allowing the jury to believe the victim has essentially been diagnosed with a syndrome that presupposes the molestation occurred.  (*People v. Jeff*, *supra*, 204 Cal.App.3d at p. 331, 251 Cal.Rptr. 135.)  Such use runs the risk of allowing the evidence to be used to show the abuse occurred.  (*Ibid*.)

Here, although the expert's response to hypothetical questions mirroring the specific events was inadmissible, we conclude the jury in this case could not improperly imply from the testimony the expert had diagnosed the victim or believed the abuse occurred.[2]  First, the witness himself repeatedly emphasized that he had not examined, interviewed or otherwise diagnosed C.  He also explained that CSAAS was not a diagnostic tool.[3]  Thus, the expert testimony itself eliminated any risk of misuse by the jury to use the evidence that the abuse occurred.

---

[2]  We reject [petitioner's] characterization of the evidence as improper "profile" evidence, as the testimony was not about [petitioner] or those with his "profile."  (See *People v. Robbie* (2001) 92 Cal.App.4th 1075, 1084, 1086-1087, 112 Cal.Rptr.2d 479.)

[3]  On cross-examination, the expert testified:  "What we're saying is, if you have an abused child and they [sic] exhibit one or more of these elements, then they [sic] fit the syndrome.  The purpose of that was to say if you have a child and you're trying to sort through what they [sic] say, keep in mind they [sic] can do any one or more of these which would initially make you question the child, but please don't make that fact stop you from listening and evaluating the total situation.  It's not diagnostic, saying they are molested because they show this, but molested children often aren't believable at times in one or more of these manners."

Second, the court specifically instructed the jury with a modified version of CALJIC No. 10.64, that provided:  "Evidence has been presented to you concerning Child Sexual Abuse Accommodation Syndrome.  This evidence is not received and must not be considered by you as proof that the allegation of sexual abuse on a child is true.  [¶]  Child Sexual Abuse Accommodation Syndrome research is based upon an approach that is completely different from that which you must take in this case.  The syndrome research begins with the assumption that sexual abuse has occurred and seeks to describe and explain common reactions of children and teenagers to that experience.  As distinguished from that research approach, you are to presume that the [petitioner] is innocent.  The People have the burden of proving guilt beyond a reasonable doubt.  [¶]  You should consider the evidence concerning the syndrome and its effect only for the limited purpose of showing, if it does, that the alleged victim's reactions as demonstrated by the evidence are not inconsistent with her having been sexually abused."  This instruction dispelled the possibility that the jury might misunderstand how to consider the CSAAS testimony.

Additionally, we observe that any improper testimony by the expert indicating that C. displayed signs of recantation was not prejudicial.  C. immediately reported the events after the incident and again at the preliminary hearing, and only retracted her story at trial.  Thus, even if the expert witness had not considered the specific facts of this case, it was clear that C.'s behavior fell within the recantation aspect of CSAAS as generally described.

Although we conclude that the hypothetical questions were objectionable, absent a demonstration of prejudice, we need not consider whether counsel's failure to object caused his performance to be deficient in order to reject [petitioner's] claim of ineffective assistance of counsel.  (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697 [80 L.Ed.2d at p. 699]; *In re Alvernaz* (1992) 2 Cal.4th 924, 945, 8 Cal.Rptr.2d 713, 830 P.2d 747.)  In this case, [petitioner] has not met his burden of establishing prejudice.

(People v. Alcaraz, slip op. at 4-11.)

Federal courts may reach the merits of habeas petitions, despite an asserted procedural bar, so long as they are clearly not meritorious.  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  Because the instant claim is without merit, the undersigned will not reach the procedural bar issue.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a

1   denial of the fundamentally fair trial guaranteed by due process.  See Henry v. Kernan, 197 F.3d

2   1021, 1031 (9th Cir. 1999).  The due process inquiry in federal habeas review is whether the

3   admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally

4   unfair.  See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  However, only if there are no

5   permissible inferences that the jury may draw from the evidence can its admission violate due

6   process.  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

7           Petitioner's claim is barred by Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir.

8   2003).  The court in Brodit held that

9               CSAAS testimony is admissible in federal child-sexual-abuse
            trials, when the testimony concerns general characteristics of
10               victims and is not used to opine that a specific child is telling the
            truth.  Although those cases did not address due process claims,
11               both rejected the contention that CSAAS testimony improperly
            bolsters the credibility of child witnesses and precludes effective
12               challenges to the truthfulness of their testimony--the very
            arguments that [petitioner Brodit] advances here.
13

14   Brodit, 350 F.3d at 991 (internal citations removed).  In the instant case, the trial court's

15   instructions under CALJIC No. 10.64 properly told the jury how to view the evidence, a

16   cautionary instruction as required by Brodit.  (Clerk's Transcript ("CT") 281.)  Juries are

17   presumed to follow their instructions.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987).

18           The instant case is distinguishable from the California cases relied on by

19   petitioner.  In People v. Robbie, 92 Cal.App.4th 1075, 112 Cal.Rptr.2d (2001), when the

20   prosecution provided hypotheticals for the expert, the expert responded that the behavior set out

21   in the prosecutor's questions was typical of a particular kind of criminal.  The court in Robbie

22   found this response prejudicial because it supported the theory that Bowker was guilty because

23   he fit the profile provided by the expert.  Id.  Here, the hypotheticals posed to the expert,

24   admitted in error as the state court found, had nothing to do with petitioner, but were focused on

25   the victim.  In addition, none of the hypotheticals were admitted to demonstrate the victim had

26   told the truth, but were used to show the victim had traits or behavior consistent with child sexual

1   abuse accommodation syndrome.  (RT 632-33.)  The evidence adduced from the expert's

2   testimony was to explain to the jury that there were reasons why the victim might recant her prior

3   testimony.  Thus, the expert's testimony was not used to demonstrate petitioner was guilty

4   because he fit a certain profile.

5           Importantly, here the expert also clarified his testimony concerning the

6   hypotheticals by immediately stating:

7           All those are possibilities without knowing the case in interviewing
            her, and working with her, and getting her to trust you.  Those are
8           things I would speculate, because in the syndrome, those are the
            things we often saw that contributed to retractions.
9

10  (RT 635.)  Because there were permissible inferences that could be drawn from this testimony,

11  there was no due process violation.  Jammal, 926 F.2d at 920.

12          The instant case is also distinguishable from People v. Bowker, 203 Cal.App.3d

13  385, 249 Cal.Rptr. 886 (1988).  In Bowker, the appellate court held that the trial court erred in

14  allowing the testimony on CSAAS in the absence of restriction on its breadth, a proper

15  foundational showing of need to rebut popular misconceptions undermining the victims'

16  credibility, and a limiting instruction.  Here, by contrast, there was argument on the admissibility

17  of the testimony of the expert witness (RT 587-97), there was voir dire on the expert's credentials

18  as an expert (RT 600-01), the court refused to allow testimony concerning battered women's

19  syndrome because the prosecution failed to provide adequate notice to defense counsel (RT 614-

20  21), the jury was instructed on how to evaluate the testimony of expert witnesses (CT 255-57),

21  and the jury was provided a limiting instruction concerning the CSAAS testimony in particular

22  (CT 281).

23          Petitioner's reliance on the expert's use of the ten percent figure is equally

24  unavailing.  The expert's use of this statistic, when taken in context, was by way of history and

25  background.  (RT 605, 607.)  The expert was explaining how the article describing CSAAS came

26  about (RT 603), and relating the history of the syndrome by explaining that the initial focus of

1   the research was on "stranger danger" until research revealed that only ten percent of the

2   offenders were strangers.  (RT 605.)  It is unlikely that the jury heard this testimony concerning

3   background and history of the syndrome as the expert testifying that petitioner was guilty because

4   he fell in the 90% category.  Here, the jury was specifically instructed that the research approach

5   of CSAAS differed from the task assigned to the jury in that petitioner was presumed innocent,

6   and that the syndrome evidence could be considered "only for the limited purpose of showing, if

7   it does, that the alleged victim's reactions as demonstrated by the evidence [were] not

8   inconsistent with her having been sexually abused."  (RT 281.)  Thus, the facts, and the expert

9   witness' testimony in this case, are distinguishable from the Washington state cases cited by

10  petitioner.  (Pet., Appendix A, at 3.)

11          The expert explained he never interviews the victim in cases for which he was

12  subpoenaed to testify:

13          My role here in this situation is to explain the academic concept of
            the syndrome and to explain how it is drawn from literally
14          thousands and thousands of cases to build together a picture.  My
            goal is not clinician.  My goal is not diagnostician. . . .  I only
15          testify in cases I have no clinical or personal involvement in.

16  (RT 631.)  Moreover, on cross-examination, the expert confirmed that CSAAS was not used for

17  diagnosis:

18          What we're saying is, if you have an abused child and they exhibit
            one or more of these elements, then they fit the syndrome.  The
19          purpose of that was to say if you have a child and you're trying to
            sort through what they say, keep in mind they can do any one or
20          more of these which would initially make you question the child,
            but please don't make that fact stop you from listening and
21          evaluating the total situation.  It's not diagnostic, saying they are
            molested because they show this, but molested children often
22          aren't believable at times in one or more of these manners.

23  (RT 638.)

24          Review of the expert testimony, in total, confirms it is unlikely the jury

25  improperly believed the expert diagnosed the victim or that the expert was testifying based upon

26  a belief that the abuse occurred.

1        Finally, the facts of this case supported the admission of the CSAAS evidence to

2   help the jury understand the victim's behavior.  C. immediately sought assistance from a

3   stranger, and reported details of the crimes to police and her friend, and her mother initially

4   reported the same crimes to police.  C. testified as to the same details of the crimes at the

5   preliminary hearing.  It was not until trial some six months later when C. retracted her story.

6   Thus, the CSAAS evidence was necessary to explain the recantation aspect of C.'s behavior.

7        In light of all of the above, this court cannot find that the admission of this

8   evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Therefore,

9   the state court's rejection of petitioner's first claim for relief was neither contrary to, nor an

10  unreasonable application of, controlling principles of United States Supreme Court precedent.

11  Accordingly, petitioner's first claim for relief should be denied.

12                    B.  Prosecutorial Misconduct

13        In ground two, petitioner contends his due process rights were violated by

14  prejudicial prosecutorial misconduct.  Specifically, petitioner alleges three separate incidents

15  demonstrate prosecutorial misconduct:  (1) the prosecutor committed misconduct by eliciting

16  evidence regarding Child Sexual Abuse Accommodation Syndrome; (2) the prosecutor

17  wrongfully elicited evidence regarding "battered women's syndrome"; and (3) the prosecutor's

18  questions posed to the investigating police officer resulted in the officer testifying that he

19  believed the victim, which was prejudicial to petitioner.  Respondent contends that no due

20  process violation occurred.

21        The last reasoned rejection of this claim is the decision of the California Court of

22  Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

23  this claim as follows:

24           [Petitioner] also claims there were four instances of prosecutorial
             misconduct that violated his Fourteenth Amendment due process
25           rights and infected the fundamental fairness of the trial.  He claims
             the prosecutor: . . .(2) convinced the court to allow the unfair
26           CSAAS evidence; (3) violated the trial court's ruling by eliciting

                                        13

evidence regarding battered women's syndrome; and (4) elicited the inadmissible and prejudicial opinion of Officer Flores that C. was being honest when she reported the incident.  Again, he argues, to the extent defense counsel did not object to the alleged misconduct, counsel was constitutionally ineffective.  We address each allegation of misconduct in turn.

. . .

Nor do we find any prosecutorial misconduct in "succeed[ing] with the court's approval in getting before the jury ... devastating syndrome evidence."  As explained herein, the CSAAS evidence was admissible to explain C.'s seemingly self-impeaching behavior.  Thus, there was no misconduct in presenting this admissible evidence.

We also reject [petitioner's] claim defense counsel should have cited the prosecutor for misconduct or requested a curative instruction when the prosecution's expert witness mentioned battered women, despite the trial court's ruling that there would be no evidence of battered women's syndrome since the prosecutor had been late in requesting to present expert opinion on the subject.

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process.  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury." (*People v. Morales* (2001) 25 Cal.4th 34, 44, 104 Cal.Rptr.2d 582, 18 P.3d 11.)  The deliberate asking of questions calling for inadmissible and prejudicial answers amounts to prosecutorial misconduct. (*People v. Bell* (1989) 49 Cal.3d 502, 532, 262 Cal.Rptr. 1, 778 P.2d 129.)  The prosecutor has a duty to guard against inadmissible statements from his or her witnesses.  (*People v. Parsons* (1984) 156 Cal.App.3d 1165, 1170, 203 Cal.Rptr. 412.)

Initially, we recognize, as did the trial court, the witness did not mention "battered women's syndrome."  Moreover, the evidence regarding battered women was not elicited by the prosecutor, but simply referenced by the expert as an example during a long narrative explaining the accommodation aspect of CSAAS.[4]  Defense counsel promptly objected to the reference to battered

---

[4]  The expert testified: "You can accommodate to being battered.  You can accommodate to being molested.  You can accommodate to living.  We see it in domestic violence where women stay with their partners after they've been horribly beaten.  It's accommodation.  Why don't they leave?  And that phenomena has been so well exhibited in other areas.  It's now in the child abuse area and we're very clear about it."

women, and at sidebar, explained to the court that he was concerned the expert might get more specific by mentioning the battered women's syndrome.  The court instructed the prosecutor that its ruling stood and there would be no more mention of battered women.  Defense counsel indicated that the admonition satisfied his concerns and there was no further mention of the subject.  Thus, the record does not establish prosecutorial misconduct or any deficiency of defense counsel to object on that ground.

Finally, [petitioner] contends the prosecutor engaged in misconduct by eliciting Officer Flores's opinion of C.'s credibility when C. reported the events to the officer. The prosecutor asked the officer, "If you could describe C[.], how forthcoming was she with what had happened?  Was she embarrassed?  Was she real talkative?  Was she nervous?  Scared?  Describe all--if you could describe her demeanor and her ability to talk about this incident." After the officer described C.'s demeanor, the prosecutor then asked, "Did you get any sense from her that she was deliberating a story or fabricating a statement or anything-"  The officer answered "No."  The prosecutor then asked, "Did you get any sense that this was somehow not true or--I mean--well, that she was somehow reciting a monologue to you or something?"  The officer answered, "No, I didn't get any sense of that. I--the feeling I got is that she was being honest with me.  She was telling me the whole incident as it happened to her."

[Petitioner] is correct that some of these questions and the officer's responses improperly introduced lay opinion regarding the veracity and credibility of another witness.  (See *People v. Melton* (1988) 44 Cal.3d 713, 744, 244 Cal.Rptr. 867, 750 P.2d 741.)  . . . .
. . .

In reviewing the allegations of misconduct and error, individually and collectively, we find no prejudice to [petitioner].

(People v. Alcaraz, slip op. at 11-16.)

Federal habeas review of prosecutorial misconduct is limited to the issue of

whether the conduct violated due process.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986);

Sassounian v. Roe, 230 F.3d 1097, 1106 (9th Cir. 2000); Thomas v. Borg, 74 F.3d 1571, 1576

(9th Cir. 1996).  Prosecutorial misconduct violates due process when it has a "substantial and

injurious effect or influence in determining the jury's verdict."  See Ortiz-Sandoval v. Gomez, 81

F.3d 891, 899 (9th Cir. 1996) (quoting O'Neal v. McAninch, 513 U.S. 432, 443 (1995)).  A

claimant must show "first that the prosecution engaged in improper conduct and second that it

was more probable than not that the prosecutor's conduct materially affected the fairness of the trial." United States v. Smith, 893 F.2d 1573, 1583 (9th Cir. 1990) (citation omitted).  If left with "grave doubt" whether the error had substantial influence over the verdict, a court must grant collateral relief.  Brecht v. Abrahamson, 507 U.S. 619, 631 (1993); Ortiz-Sandoval, 81 F.3d at 899.

Petitioner's first claim that the prosecutor engaged in misconduct by seeking to have CSAAS evidence admitted is baseless.  As noted by the trial court and the state appellate court, the CSAAS evidence was admissible to explain the victim's recantation behavior.  Because this evidence was admissible for proper purposes, the prosecutor's conduct was not improper.

Petitioner's second claim is also unavailing.  The record confirms that the prosecutor did not elicit the expert's reference to battered women.  (RT 613.)  Rather, the expert was engaged in a long-winded explanation of entrapment and accommodation, the third element of CSAAS.  (RT 610-13.)  While attempting to explain accommodation, the expert testified:

> You can accommodate to being battered.  You can accommodate to being molested.  You can accommodate to living.  We see it in domestic violence where women stay with their partners after they've been horribly beaten.  It's accommodation.  Why don't they leave?  And that phenomena has been so well exhibited in other areas.  It's now in the child abuse area and we're very clear about it.

> The children stay in situations we'd expect, and then we don't believe this is really happening to them because they'd obviously tell someone, they'd leave, they'd get out of there, they wouldn't go back.  And in fact, they do.  They do stay or they go back in spite of the fact they're truly being molested.  So they've learned to survive sort of in the context of all the issues.

(RT 612-13.)  At that point, defense counsel asked for a sidebar, the jury was removed, and defense counsel objected to the reference to battered women, expressing concern that further testimony might be elicited about Battered Women's Syndrome (RT 614-15), which the court had previously precluded (RT 596).  After hearing arguments, the trial court issued the following

admonition:

> there won't be any more testimony about battered women and the
> dynamics between them and their spouses, cohabitants, and
> significant others.

(RT 620.)  As noted above, the prosecutor did not solicit any reference to "Battered Women's Syndrome."  Moreover, the expert's reference to women "being battered" did not violate the court's order excluding reference to "Battered Women's Syndrome."  Thus, the prosecution did not engage in misconduct with regard to this testimony.

Petitioner's final claim of prosecutorial misconduct is based on alleged prejudice suffered by the investigating police officer's testimony that he believed the victim, which petitioner alleges was wrongfully elicited by the prosecution.  The record reflects the following:

> Q.  [Prosecution]:  Did you get any sense from her that she was
> deliberating a story or fabricating a statement or anything –
>
> A.  [Officer Flores]:  No.
>
> Q.  -- because you were the one speaking to her in Spanish?
>
> A.  Yes.
>
> Q.  Did you get any sense that this was somehow not true or -- I
> mean -- well, that she was somehow reciting a monologue to you
> or something?
>
> A.  No, I didn't get any sense of that.  I -- the feeling I got is that
> she was being honest with me.  She was telling me the whole
> incident as it happened to her.

(RT 492-93.)

As the state court found, the prosecution's questions elicited responses improperly attributing credibility and veracity by one lay witness on behalf of the victim.  The state court, however, properly found that any prejudice sustained by this testimony was cured by defense counsel's direct attack of this witness on cross-examination:

> Q.  But you don't know whether, in fact, their statements were true
> or not; isn't that fair to say?

1        A.  Yes.

2  (RT 503.)

3        This court accepts the state court's conclusion that the prosecution's questions

4  designed to elicit Officer Flores' opinion as to the victim's credibility was misconduct.  Even

5  assuming the prosecutor committed misconduct, however, these actions violate the constitution

6  only if they "so infected the trial with unfairness as to make the resultant conviction a denial of

7  due process."  <u>Darden</u>, 477 U.S. at 181 (citation omitted).  As discussed by the California Court

8  of Appeal, the prejudice to petitioner was dispelled by defense counsel's effective cross-

9  examination, and thus did not have a substantial or injurious effect on the verdict.

10  <u>Ortiz-Sandoval</u>, 81 F.3d at 899.  The opinion of the Court of Appeal is not contrary to or an

11  unreasonable application of clearly established Federal law, as determined by the Supreme Court

12  of the United States, nor was it based on an unreasonable determination of the facts in light of the

13  evidence presented in the State court proceeding.  Accordingly, this claim should also be denied.

14        C.  <u>Ineffective Assistance of Counsel</u>

15        Petitioner raised two claims of ineffective assistance of counsel in the California

16  Supreme Court and his remaining claims in his habeas petition filed in the San Joaquin County

17  Superior Court.  Both state courts denied petitioner's claims as follows:

18      [Petitioner] also claims he received constitutionally ineffective
        counsel to the extent his counsel failed to object to the allegedly
19      inadmissible evidence [CSAAS].  As counsel's performance must
        be deficient to establish such a claim, we address the effectiveness
20      of counsel only in connection to the contention which we agree
        included inadmissible evidence.  (See II, post.)  (*Strickland v.*
21      *Washington* (1984) 466 U.S. 668, 687 . . . .)[5]
                      . . .
22

23      [Petitioner] is correct that some of these questions and the
        officer's responses improperly introduced lay opinion regarding the
24      veracity and credibility of another witness.  (See *People v. Melton*
        (1988) 44 Cal.3d 713, 744, 244 Cal.Rptr. 867, 750 P.2d 741.) . . . .

25

26        [5]  This paragraph was included as footnote one in the first paragraph of the discussion
section of the opinion.  <u>People v. Alcaraz</u>, slip op. at 4, n.1.

1

However, we do not fault counsel for not objecting and requesting an admonition.

2

3

For obvious tactical reasons, defense counsel addressed the improper testimony by attacking it directly. On cross-examination, defense counsel forced the officer to admit that he did not know whether C. was telling the truth or not. Counsel asked the officer, "But you don't know whether, in fact, their statements were true or not; isn't that fair to say?" The officer admitted, "Yes." Such rebuttal dispelled any prejudice to [petitioner] of the improper opinion evidence and was more effective than any curative instruction or admonition given by the court. Thus, once again, the record does not establish counsel was deficient in failing to object on the grounds of prosecutorial misconduct.

4

5

6

7

8

9

In reviewing the allegations of misconduct and error, individually and collectively, we find no prejudice to [petitioner].

10

(People v. Alcaraz, slip op. at 11-16.)

11

The San Joaquin County Superior Court denied these claims as follows:

12

Petitioner has failed to demonstrate that counsel's decisions were anything other than trial tactics which are not reviewable on habeas corpus. Petitioner has therefore failed to set forth a prima facie case of ineffective assistance of counsel so far as these claims are concerned. (*People v. Weaver* (2001) 26 Cal.4th 876, 29 P.3d 103, 111 Cal.Rptr.2d 2.)

13

14

15

16

In addition, petitioner has failed to set forth any facts to either support his contentions or demonstrate prejudice as a result of counsel's actions. He has therefore failed to set forth a prima facie case for habeas corpus relief. (*Strickland v. Washington* (1984) 466 U.S. 668; *People v. Weaver*, *supra*; *In re Bower* (1985) 38 Cal.3d 865; 215 Cal.Rptr. 267, 700 P.2d 1269; *People v. Jackson* (1980) 28 Cal.3d 264, 168 Cal.Rptr. 603, 618 P.2d 149; and *In re Muszalski* (1975) 52 Cal.App.3d 500, 125 Cal.Rptr. 286.)

17

18

19

20

(LD 8.)

21

The Sixth Amendment guarantees the effective assistance of counsel. The United

22

States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

23

Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of

24

counsel, a petitioner must first show that, considering all the circumstances, counsel's

25

performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner

26

identifies the acts or omissions that are alleged not to have been the result of reasonable

19

1  professional judgment, the court must determine whether, in light of all the circumstances, the

2  identified acts or omissions were outside the wide range of professionally competent assistance.

3  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

4          Second, a petitioner must establish that he was prejudiced by counsel's deficient

5  performance. Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

6  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

7  been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

8  confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

9  F.3d 972, 981 (9th Cir. 2000).   "[A] court need not determine whether counsel's performance

10  was deficient before examining the prejudice suffered by the defendant as a result of the alleged

11  deficiencies. . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

12  sufficient prejudice, . . . that course should be followed."  Strickland, 466 U.S. at 697.

13          In assessing an ineffective assistance of counsel claim "[t]here is a strong

14  presumption that counsel's performance falls within the wide range of professional assistance."

15  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted).  Additionally, there is a

16  strong presumption that counsel "exercised acceptable professional judgment in all significant

17  decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

18          First, the record reflects that defense counsel objected to the admission of the

19  CSAAS evidence on the grounds of relevance as well as under California Evidence Code Section

20  352, arguing that the prejudice to petitioner outweighed the evidence's probative value.  The trial

21  court heard argument on the admissibility of this evidence prior to ruling the evidence could be

22  admitted.  Petitioner has failed to demonstrate that but for defense counsel's failure to object on

23  due process grounds, the trial court would not have admitted this evidence.  Indeed, given the

24  facts of this case it is unlikely the trial court would have so held as the testimony was admissible

25  to explain C.'s behavior in this case.  Because the victim's testimony was "seemingly self-

26  impeaching," the expert's testimony was necessary to help the jury understand the victim's

behavior.  The state court's finding that petitioner failed to establish either the inadequate representation prong or the prejudice prong of <u>Strickland</u> was not contrary to or an unreasonable application of <u>Strickland</u>.  <u>Id.</u>, 466 U.S. at 687-88.

Second, the state court agreed with petitioner that defense counsel was inadequate for failing to object to the prosecution's use of hypothetical questions addressed to the CSAAS expert, finding that the questions too closely mirrored the facts of the instant case.  However, the state court properly found no prejudice from defense counsel's failure to object.  The state court reviewed the record and found:

> Here, although the expert's response to hypothetical questions mirroring the specific events was inadmissible, we conclude the jury in this case could not improperly imply from the testimony the expert had diagnosed the victim or believed the abuse occurred. [Footnote omitted.]  First, the witness himself repeatedly emphasized that he had not examined, interviewed or otherwise diagnosed C.  He also explained that CSAAS was not a diagnostic tool.  [Footnote omitted.]  Thus, the expert testimony itself eliminated any risk of misuse by the jury to use the evidence that the abuse occurred.

(<u>People v. Alcaraz</u>, slip op. at 9.)  Any prejudice was also dispelled by the specific jury instruction explaining how the CSAAS evidence was to be used:

> Evidence has been presented to you concerning child sexual abuse accommodation syndrome.  This evidence is not received and must not be considered by you as proof that the allegation of sexual abuse on a child is true.
>
> Child sexual abuse accommodation syndrome research is based upon an approach that is completely different from that which you must take to this case.  The syndrome research begins with the assumption that sexual abuse has occurred, and seeks to describe and explain common reactions of children and teenagers to that experience.  As distinguished from that research approach, you are to presume the defendant innocent.  The People have the burden of proving guilt beyond a reasonable doubt.
>
> You should consider the evidence concerning the syndrome and its effect only for the limited purpose of showing, if it does, that the alleged victim's reactions, as demonstrated by the evidence, are not inconsistent with her having been sexually abused.

(CT 281.)  The jury was also instructed on how to evaluate the testimony of expert witnesses. (CT 255-57.)  Therefore, the state court's decision that petitioner failed to demonstrate <u>Strickland</u> prejudice on this claim was neither contrary to nor an unreasonable application of Supreme Court precedent.

Petitioner's third claim of ineffective assistance of counsel is belied by the record. Petitioner argues that defense counsel was ineffective because he failed to object when the prosecution elicited Officer Flores' testimony that he found the victim credible.  However, the record makes clear that defense counsel chose to wait and address the testimony on cross-examination.  As noted above, defense counsel directly asked Officer Flores:  "But you don't know whether, in fact, their statements were true or not; isn't that fair to say?"  (RT 503.)  A tactical decision by counsel with which the defendant later disagrees is not a basis for a claim of ineffective assistance of counsel.  <u>Guam v. Santos</u>, 741 F.2d 1167, 1169 (9th Cir. 1984). "Counsel's tactical decisions are virtually unchallengeable."  <u>Furman v. Wood</u>, 190 F.3d 1002, 1006 (9th Cir. 1999) (citation omitted).  Because the record reflects that the failure to object was a tactical decision on behalf of defense counsel, this claim also fails.

With regard to the ineffective assistance of counsel claims raised in petitioner's state habeas petition, the respondent identified two claims not encompassed by the claims raised above:

> 1.  10.  Petitioner's paid legal counsel [fell] below a constructive
> standard of prejudicial review by not recalling this minor witness,
> to [clarify] the truthfulness of her recanting, or her original
> allegations.  (LD 13 at 69.)
>
> 2.  22.  Counsel's failure to challenge the use of the word "sexual"
> in Child Sexual Abuse Accommodation Syndrome.  (LD 13 at 75.)

(Ans. at 17.)  Petitioner did not object to the characterization of his claims.  (Traverse, *passim*.) Petitioner also did not specifically address these two claims in his traverse.  (<u>Id</u>.)

As noted above, the state court found defense counsel's decisions were trial tactics and did not demonstrate inadequate representation on the part of defense counsel.  (LD 8.)

1   Moreover, the superior court found petitioner failed to demonstrate prejudice under <u>Strickland</u>.

2   (LD 8.)  Because petitioner simply referenced his state court petition in asserting the instant

3   claims, his federal claims suffer from the same defects.  Petitioner made no effort to demonstrate

4   that but for defense counsel's alleged errors, the outcome of this case would have been different.

5   The state superior court's denial of this claim was neither contrary to nor an unreasonable

6   application of Supreme Court authority.

7          In his traverse, petitioner argues that the jurors ignored the testimony of the two

8   victims that they previously lied concerning the sexual misconduct.  (Traverse at 28.)  Petitioner

9   contends that California Penal Code § 1181(6)[6] required the jury to accept their trial testimony

10  that pointed to petitioner's innocence.  (Traverse at 28.)  However, petitioner is mistaken.

11  Evidence of the victims' prior statements to police and witnesses, as well as C.'s testimony at the

12  preliminary hearing, were also admitted for the jury's consideration.  It was for the jury to decide

13  whether the victims lied to the police on the day of the alleged incident and C. lied during the

14  preliminary hearing, or whether the victims lied at trial.

15          D.  <u>Cumulative Error</u>

16          Petitioner's final claim is that the cumulative effect of the errors alleged herein

17  constitute a denial of due process.

18          The Ninth Circuit has concluded that under clearly established United States

19  Supreme Court precedent the combined effect of multiple trial errors may give rise to a due

20  process violation if it renders a trial fundamentally unfair, even where each error considered

21  individually would not require reversal.  <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th. Cir. 2007)

22  (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974), and <u>Chambers v. Mississippi</u>, 410

23

24  [6]  California Penal Code § 1181(6) reads as follows:  "When the verdict or finding is
    contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree
    of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime

25  included therein, the court may modify the verdict, finding or judgment accordingly without
    granting or ordering a new trial, and this power shall extend to any court to which the cause may

26  be appealed;"  (<u>Id</u>.)

1   U.S. 284, 290 (1973)).  "The fundamental question in determining whether the combined effect

2   of trial errors violated a defendant's due process rights is whether the errors rendered the criminal

3   defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a 'substantial and

4   injurious effect or influence' on the jury's verdict."  Parle, 505 F.3d at 927 (quoting Brecht v.

5   Abrahamson, 507 U.S. 619, 637 (1993)).  See also Hein v. Sullivan, 2010 WL 1427588, *15 (9th

6   Cir. 2010) (same).

7           This court has addressed each of petitioner's claims and has concluded that no

8   error of constitutional magnitude occurred.  This court also concludes that the alleged errors,

9   even when considered together, did not render petitioner's defense "far less persuasive," nor did

10  they have a "substantial and injurious effect or influence on the jury's verdict."  Accordingly,

11  petitioner is not entitled to relief on his claim of cumulative error.

12  VI.  Conclusion

13          For all of the above reasons, the undersigned recommends that petitioner's

14  application for a writ of habeas corpus be denied.  If petitioner files objections, he shall also

15  address whether a certificate of appealability should issue and, if so, why and as to which issues.

16  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

17  substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

18          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

19  writ of habeas corpus be denied.

20          These findings and recommendations are submitted to the United States District

21  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

22  one days after being served with these findings and recommendations, any party may file written

23  objections with the court and serve a copy on all parties.  Such a document should be captioned

24  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

25  objections shall be filed and served within fourteen days after service of the objections.  The

26  parties are advised that failure to file objections within the specified time may waive the right to

1    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

2    DATED:  September 7, 2010

3

4

5

6                                        KENDALL J. NEWMAN
                                         UNITED STATES MAGISTRATE JUDGE
7    alsa1597.157

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26